[Nos. 16666-0-III; 17605-3-III. Division Three. August 10, 1999.]
THE STATE OF WASHINGTON, *Respondent*, v. GEORGE
LEONARD GILMER, *Appellant*.

---

*Suzanne L. Elliott*, for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney*, and *Bruce Hanify, Deputy*, for respondent.

KURTZ, J. — RCW 13.04.030(1)(e)(iv)(A)[1] confers exclusive jurisdiction in adult court over any 16- or 17-year-old who commits a "serious violent offense." Pursuant to this provision, 17-year-old George Gilmer was charged in superior court with a serious violent offense, second degree felony murder, based on the predicate crimes of first degree reckless endangerment and second degree malicious mischief. Mr. Gilmer was subsequently convicted as charged and sentenced to 212 months incarceration. On appeal, Mr. Gilmer challenges the jurisdiction of the trial court. He contends this matter should have been remanded to juvenile court because neither of the predicate crimes constitutes a "serious violent offense" under the statutory scheme. Alternatively, Mr. Gilmer asserts the trial court erred in: (1) misstating the law of felony murder when instructing the jury; (2) failing to give an instruction requiring the jury to find that the victim's death was a foreseeable consequence of the predicate felonies; (3) failing to instruct the jury that the crime of manslaughter is a lesser included offense of felony murder by reckless endangerment; and (4) refusing to instruct the jury on the inferior degree offense of second degree manslaughter for felony murder by reckless endangerment or malicious mischief. In addition, Mr. Gilmer contends his conviction violates the Sentencing Reform Act of 1981 (SRA) and various rights granted under both the state and the federal constitutions. Mr. Gilmer's conviction and sentence are affirmed.

## FACTS

On September 25, 1996, George Gilmer, then age 17, was charged in Yakima County Superior Court with second degree murder pursuant to RCW 9A.32.050(1)(b). The information alleged that Mr. Gilmer caused the death of another in the "course of and furtherance of" the crime of "Second Degree Malicious Mischief and/or First Degree Reckless Endangerment."

---

[1]Now RCW 13.04.030(1)(e)(v)(A).

There is little dispute over the facts of this case. On the night of September 20, 1996, Mr. Gilmer, David Diaz, Jim Burkett, Holly Sorenson, and Jennifer Fife were out together driving around rural Yakima County. Mr. Diaz was driving a Ford Bronco, Mr. Gilmer was sitting next to Mr. Diaz, and Ms. Sorenson was in the passenger seat next to the window. Mr. Burkett and Ms. Fife were in the backseat.

After leaving a party, the five teenagers decided to build a fire and drove to a greenhouse at the end of Freimuth Road to take some wood. While driving down West Huntzinger Road to get to the greenhouse, the Bronco passed a white car parked along the side of the road. Although someone in the Bronco suggested throwing rocks at the windows of the white car or shooting out its windows, they did not stop but proceeded past the white car and continued on to the greenhouse. At the greenhouse, Mr. Diaz, Mr. Gilmore, and Mr. Burkett loaded firewood into the back of the Bronco.

On the return trip, as they approached the white car, Mr. Gilmer asked Mr. Burkett to hand him a Remington 1100 shotgun located in the back of the Bronco. Mr. Burkett turned around in his seat and got the gun out of the back. Ms. Fife had to lean over toward the window so that the gun could be handed up to the front seat. Mr. Gilmer asked Ms. Fife to give him a shotgun shell, but she refused. Mr. Gilmer then reached in the backseat and found a shotgun shell himself, or was given one by Mr. Burkett. Mr. Diaz, or perhaps Mr. Diaz and Mr. Gilmer, loaded the shotgun shell into the gun. As the Bronco pulled up next to the white car, Mr. Gilmer stuck the barrel of the gun out the window of the passenger side of the Bronco, pointed the gun at the white car, and pulled the trigger. The Bronco drove off. At that time, the occupants of the Bronco were not sure whether the white car had been hit.

Although Mr. Gilmer and the other occupants in the Bronco believed that the white car was empty, this was not true. There were two people in the car. Zachary Kellar, age

17, was sitting in the front seat of the white car next to his friend, Jaymee Logston. Tragically, Mr. Kellar was killed when the shot from the gun fired by Mr. Gilmer struck Mr. Kellar in the face.

Mr. Gilmer was charged by information with second degree murder by commission of a felony. The use of a deadly weapon during the crime was added to the allegation. Prior to trial, Mr. Gilmer moved to dismiss the charges in superior court and asked that the matter be remanded to juvenile court. This request was denied and the matter proceeded to trial. A jury found Mr. Gilmer guilty of second degree murder and added the deadly weapons enhancement. The parties agreed that the standard range for Mr. Gilmer's crime, including the firearm enhancement, was 183 to 224 months in prison. Mr. Gilmer requested a sentence below the standard range arguing that he did not know the car was occupied when he fired the gun and that he lacked any intent to cause personal injury. The court imposed a sentence of 17 years and 8 months, a total of 212 months, based on the age of the victim on the night of his death. Mr. Gilmer appeals, challenging the jurisdiction of the trial court and the operation of the Washington felony murder rule.

## ANALYSIS

### Did the trial court err in refusing to remand the charge against Mr. Gilmer to juvenile court?

The second degree felony murder charge brought against Mr. Gilmer was filed in superior court rather than juvenile court pursuant to RCW 13.04.030(1)(e)(iv)(A), the automatic decline provision. RCW 13.04.030(1)(e)(iv) confers exclusive jurisdiction in adult court over 16- or 17-year-olds who commit specific violent offenses. The grant of jurisdiction under RCW 13.04.030(1)(e)(iv) is automatic and is conferred without a hearing in juvenile court on the declination of juvenile court jurisdiction. Exclusive jurisdiction in adult court is triggered under RCW 13.04-

.030(1)(e)(iv) in two ways. Subsection A, applicable here, grants exclusive jurisdiction in adult court whenever a 16- or 17-year-old is charged with a "serious violent offense." Subsection B confers exclusive jurisdiction in adult court when a 16- or 17-year-old is charged with a "violent offense" and has a defined criminal history. The term "serious violent offense" includes second degree murder. RCW 9.94A.030(31)(a). Significantly, RCW 13.04.030(1)(e)(iv) has survived scrutiny under the Washington Constitution, article II, section 19, and the Eighth, Fourteenth and Fifth Amendments of the federal constitution. *In re Boot*, 130 Wn.2d 553, 575, 925 P.2d 964 (1996).

Mr. Gilmer's argument is one of statutory construction. Mr. Gilmer concedes that second degree murder is a serious violent offense for purposes of conferring jurisdiction under RCW 13.04.030(1)(e)(iv)(A). However, according to Mr. Gilmer, juveniles can commit only "offenses," RCW 13.40.020(19),[2] and cannot be charged with felony murder in adult court without a decline hearing. He asserts he could not be charged with second degree felony murder in adult court because as a juvenile, he could not commit the underlying felony, and neither of the two predicate crimes constitutes a serious violent offense standing alone. Under his view, a 16- or 17-year-old is not subject to jurisdiction in adult criminal court based on a charge of felony murder unless a determination has been made at a decline hearing that the predicate crime constitutes a "serious violent offense" as defined in RCW 9.94A.030(31)(a). Mr. Gilmer asserts this matter must be remanded to juvenile court for a decline hearing to evaluate the nature of the underlying offenses.

"In construing a statute, the court's paramount

---

[2]RCW 13.40.020(19) reads: " 'Offense' means an act designated a violation or a crime if committed by an adult under the law of this state, under any ordinance of any city or county of this state, under any federal law, or under the law of another state if the act occurred in that state."

Similarly, RCW 13.40.240 provides: "All references to juvenile delinquents or juvenile delinquency in other chapters of the Revised Code of Washington shall be construed as meaning juvenile offenders or the commitment of an offense by juveniles as defined by this chapter."

duty is to ascertain and give expression to the intent of the Legislature." *Service Employees Int'l Union, Local 6 v. Superintendent of Pub. Instruction*, 104 Wn.2d 344, 348, 705 P.2d 776 (1985). A court may not engage in statutory construction if the statutory language is unambiguous. *State v. Bolar*, 129 Wn.2d 361, 366, 917 P.2d 125 (1996). Where the statutory language is plain and unambiguous, its meaning must be derived from the wording of the statute itself. *Human Rights Comm'n v. Cheney Sch. Dist. No. 30*, 97 Wn.2d 118, 121, 641 P.2d 163 (1982).

■ Mr. Gilmer's argument misunderstands the purpose and operation of RCW 13.04.030(1)(e)(iv). In adopting the automatic decline provision, the Legislature expressed an intent to "increase the punishment for youthful offenders for the most serious violent crimes by statutorily expanding the jurisdiction of the adult criminal court over 16- and 17-year-olds who commit such crimes without a hearing in juvenile court under RCW 13.40.110." *Boot*, 130 Wn.2d at 563. Unquestionably, the purpose of RCW 13.04-.030(1)(e)(iv) is to ensure that 16- and 17-year-olds who commit serious violent crimes will be tried and punished as adults.

RCW 13.04.030(1)(e)(iv) is triggered whenever the conduct of a particular 16- or 17-year-old meets the requirements of subsection A or B. Under subsection A, the Legislature has determined that a 16- or 17-year-old who commits a "serious violent offense" is subject to the jurisdiction of adult court. In effect, the term "serious violent offense" was adopted by the Legislature as a benchmark to be applied to determine whether the conduct in question was serious enough to cause jurisdiction to vest in adult criminal court rather than juvenile court. It follows then that the conduct in question must be evaluated solely against this benchmark rather than the context of the juvenile court system.

Mr. Gilmer's argument rests on his belief that he cannot be convicted of felony murder in adult court because he could not be convicted of a felony in juvenile court. This

argument misses the point. "[T]he fundamental difference between the adult criminal code and the juvenile code is not the definition of criminal activity but the penalties and procedures that attach to that activity." *State v. Cheatham*, 80 Wn. App. 269, 276, 908 P.2d 381 (1996). Given the clear language of RCW 13.04.030(1)(e)(iv)(A), it is irrelevant that an adjudication of guilt rendered in the juvenile court system is referred to as a conviction of an "offense" rather than a "crime." "Even if juveniles cannot technically be convicted of crimes or felonies, the mere fact that the statute uses the terms 'crime' or 'felony' in defining a juvenile offense does not preclude applying that statute to juveniles." *Cheatham*, 80 Wn. App. at 276.

RCW 13.04.030(1)(e)(iv)(A) is unambiguous and seeks to hold 16- and 17-year-old offenders to adult standards precisely because they have committed serious adult crimes. The fact that Mr. Gilmer could not have been convicted of a felony in juvenile court aptly illustrates the problem this statute was designed to address. Superior court had exclusive jurisdiction over the charge brought against Mr. Gilmer. He was not entitled to a decline hearing in juvenile court.

Did the court misstate the law of felony murder in instructing the jury that it was not required that the death "furthered" a crime?

Mr. Gilmer contends Instruction No. 15 does not properly set forth the relevant legal standard. Read as a whole, jury instructions must make the relevant legal standards manifestly apparent to the average juror. *State v. LeFaber*, 128 Wn.2d 896, 900, 913 P.2d 369 (1996). RCW 9A.32.050(1)(b) provides that a person is guilty of second degree felony murder when he "commits . . . any felony other than those enumerated in RCW 9A.32.030(1)(c), and, in the course of and in furtherance of such crime or in immediate flight therefrom, he, or another participant, causes the death of a person other than one of the participants." For purposes of felony murder, a homicide is deemed committed during the perpetration of a felony if there is a close

proximity in terms of time and distance between the felony and the homicide. *State v. Leech*, 114 Wn.2d 700, 706, 790 P.2d 160 (1990).

Instruction No. 15 reads as follows:

> The phrase "in furtherance of a crime" as it relates to a death means the cause of death occurred as a natural and probable consequence of the crime, while a crime was advancing or occurring. It is not required that a death furthered a crime, but rather that the crime itself was being furthered, and this furtherance itself, in turn, is a proximate cause of a death.

Mr. Gilmer first contends this instruction is erroneous because of the phrase "[i]t is not required that a death furthered a crime[.]" This argument is without merit. Instruction No. 15, read as a whole, provided the jury with the relevant legal standard. A jury instruction is not erroneous because one phrase, read out of context, does not provide the jury with a view of the entire legal standard. The term "in furtherance of" in the statute merely requires that the death be sufficiently close in time and place of the felony to be part of the res gestae of the felony. *Leech*, 114 Wn.2d at 709. The death need not further the crime.

Mr. Gilmer also suggests that the question of whether the predicate felony had been completed should have been submitted to the jury. However, the jury had to address this question when it considered Instruction No. 15. Moreover, the record contains substantial evidence to support the jury's conclusion that the killing occurred in the furtherance of, or flight from, the predicate felonies. The cases relied upon by Mr. Gilmer, *State v. Daniels*, 119 Wash. 557, 205 P. 1054 (1922), *superseded by statute in State v. Komok*, 113 Wn.2d 810, 783 P.2d 1061 (1989), and *State v. Brenner*, 53 Wn. App. 367, 768 P.2d 509, *review denied*, 112 Wn.2d 1020 (1989), involved fact situations where it was argued that intervening actions broke the connection between the killing and the felony. The facts here do not indicate that the felony was completed when the killing took place. Here there was a close proximity between the predicate felonies and the death of Mr. Kellar.

Did the court err in failing to give an instruction requiring the jury to find that the victim's death was a foreseeable consequence of the predicate felonies in order to find Mr. Gilmer guilty of second degree felony murder?

In making his argument related to Instruction No. 15, Mr. Gilmer asserts the jury should have been instructed that the death in question must have furthered the predicate felony. Mr. Gilmer also goes one step further and asks this court to rewrite the law of felony murder in Washington. Relying on cases from other jurisdictions, Mr. Gilmer contends a conviction for felony murder is proper only when death is a foreseeable consequence of the predicate crime. Based on this reasoning, Mr. Gilmer asserts the court erred in rejecting two proposed jury instructions that would have required the jury to find that the underlying felonies were "foreseeably dangerous to human life."

Mr. Gilmer's argument is compelling, but contrary to well-established law in Washington. Intent to kill is not an element of second degree felony murder. *State v. Wanrow*, 91 Wn.2d 301, 306, 588 P.2d 1320 (1978). Additionally, Washington courts have consistently interpreted the felony murder statutes to effect the underlying legislative intent to punish those who commit a homicide in the course of a felony. *See State v. Tamalini*, 134 Wn.2d 725, 733, 953 P.2d 450 (1998); *Wanrow*, 91 Wn.2d at 308-09; *State v. Goodrich*, 72 Wn. App. 71, 77-78, 863 P.2d 599 (1993), *review denied*, 123 Wn.2d 1029 (1994). In Washington, a person is guilty of second degree felony murder if he or she causes the death of another person in the course of and furtherance of a felony. The trial court did not err by giving Instruction No. 15 and rejecting Mr. Gilmer's proposed instructions that were contrary to both the statute and the relevant case law.

Is the crime of manslaughter a lesser included offense of felony murder by reckless endangerment?

Mr. Gilmer contends that factually and legally he was entitled to a manslaughter instruction because the ele-

ments of felony murder by reckless endangerment[3] include all of the elements of manslaughter in the first degree.[4] Mr. Gilmer points out that manslaughter occurs when a person recklessly causes the death of another. Mr. Gilmer believes a person cannot commit felony murder by first degree reckless endangerment without also committing manslaughter in the first degree.

 Generally, the crimes charged in an information are the only crimes of which a defendant may be convicted and on which a jury may be instructed. *State v. Foster*, 91 Wn.2d 466, 471, 589 P.2d 789 (1979). Nevertheless, a defendant may be convicted of, and a jury instructed on, a crime that is a lesser offense necessarily included in the offense charged. *State v. Berlin*, 133 Wn.2d 541, 544-45, 947 P.2d 700 (1997). This right is codified in RCW 10.61.006 which provides: "In all other cases the defendant may be found guilty of an offense the commission of which is necessarily included within that with which he is charged in the indictment or information."

Either the defense or the prosecution may request a lesser included offense instruction. A two-part test is applied to determine whether a lesser included offense is warranted. *Berlin*, 133 Wn.2d at 545-46 (citing *State v. Workman*, 90 Wn.2d 443, 447-48, 584 P.2d 382 (1978)). "First, each of the elements of the lesser offense must be a necessary element of the offense charged. Second, the evidence in the case must support an inference that the lesser crime was committed." *Workman*, 90 Wn.2d at 447-48 (citations omitted). The first prong of the test is referred to as the "legal prong" and the second prong of the test is referred

---

[3]Former RCW 9A.36.045(1) reads in part as follows: "A person is guilty of reckless endangerment in the first degree when he or she recklessly discharges a firearm as defined in RCW 9.41.010 in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter[.]"

[4]RCW 9A.32.060(1) reads in part as follows: "A person is guilty of manslaughter in the first degree when . . . [h]e recklessly causes the death of another person."

to as the "factual prong." *Berlin*, 133 Wn.2d at 546. To satisfy the factual prong of the lesser included offense test, the evidence must permit a jury to rationally find a defendant guilty of the lesser included offense and to acquit him or her of the greater offense. *State v. Warden*, 133 Wn.2d 559, 563, 947 P.2d 708 (1997).

At the time of the Gilmer trial, the *Workman* rule had been replaced by the rule set forth in *State v. Lucky*, 128 Wn.2d 727, 912 P.2d 483 (1996). After the trial, the *Berlin* court retreated from *Lucky* and reaffirmed the rule as established in *Workman*. In returning to the *Workman* rule, the *Berlin* court concluded that the lesser included analysis must be applied to the offenses as charged and not to the offenses as they broadly appear in the statutes. In other words, when applying the lesser included analysis, the trial court should not consider all of the alternative means by which the greater offense could have been charged as directed by the *Lucky* court, but rather, should apply the *Workman* rule to the offense as actually charged.

When conducting the lesser included analysis at Mr. Gilmer's trial, the court, considering the applicable case law, determined that a manslaughter instruction was not available as a lesser included instruction of murder in the second degree. The court, apparently relying on the reasoning in *Lucky*, stated: "[F]or purposes of this trial at this time with the current state of the law, I am persuaded that the defendant is not legally entitled to a lesser included manslaughter instruction because of the various alternative methods to commit the crime of murder in the second degree."

Mr. Gilmer's argument before this court is based in large part on his assumption that the trial court applied the wrong analysis, and that the application of the reinstated *Workman* test compels the conclusion that a lesser included offense instruction was required here. However, application of the *Workman* test, rather than the alternative test set forth in *Lucky*, does not result in the conclusion that manslaughter is a lesser included offense of

felony murder. Under Washington law, neither first nor second degree manslaughter are lesser included offenses of second degree felony murder. *Berlin*, 133 Wn.2d at 550; *State v. Davis*, 121 Wn.2d 1, 846 P.2d 527 (1993); *Tamalini*, 134 Wn.2d 725. The reason for this is simple. First and second degree manslaughter are not lesser included offenses of first or second degree felony murder because the specific mental elements of first and second degree manslaughter are not elements of first or second degree felony murder. *Tamalini*, 134 Wn.2d at 729-30. Applying the *Workman* test, the question of whether manslaughter is a lesser included offense of felony murder necessarily fails the legal prong of the analysis.

Mr. Gilmer attempts to distinguish *Berlin*, *Davis* and *State v. Dennison*, 115 Wn.2d 609, 801 P.2d 193 (1990), contending these cases did not consider the issue of whether manslaughter is a lesser included offense of felony murder by reckless endangerment. Mr. Gilmer further asserts that the elements of felony murder by reckless endangerment include all of the elements of manslaughter in the first degree. We need not engage in any comparison of the elements of felony murder by reckless endangerment and manslaughter because Washington case law does not suggest that such inquiry is proper. First degree manslaughter is not a lesser included offense of second degree felony murder by reckless endangerment or any other predicate felony.

Did the court err in refusing to instruct the jury on second degree manslaughter as an inferior degree offense of the charged offense of felony murder based on reckless endangerment and malicious mischief?

Mr. Gilmer suggests second degree felony murder and second degree manslaughter are different degrees of the same offense, the crime of homicide. Mr. Gilmer asserts the jury should have been instructed on manslaughter as an inferior degree crime to the charged offense of second degree murder.

A defendant is entitled to an instruction on an

inferior degree offense if: (1) the statutes for both the charged offense and the proposed inferior degree offense proscribe but one offense; (2) the information charges an offense that is divided into degrees, and the proposed offense is an inferior degree of the charged offense; and (3) there is evidence that the defendant committed only the inferior offense. *Tamalini*, 134 Wn.2d at 732. In *Tamalini*, the Washington Supreme Court concluded that "the second degree felony murder statute and the two statutes defining the degrees of manslaughter proscribe separate and distinct offenses." *Id.* at 733.

Mr. Gilmer attempts to distinguish *Tamalini*, arguing that while there may not have been separate and distinct conduct in *Tamalini*, an examination of the facts here indicates there is no distinction between reckless endangerment that results in a death and first degree manslaughter. Once again Mr. Gilmer urges this court to engage in an inquiry that is not authorized under the law of felony murder in Washington. In effect, Mr. Gilmer asks this court to compare the mental elements of the crime of manslaughter with the mental elements of the crime of second degree felony murder by reckless endangerment or malicious mischief. Mr. Gilmer is convinced that if we engage in this inquiry we will conclude, as he has, that the crimes are the same.

We will not engage in this inquiry because it has been determined that the crimes are not the same. Simply stated, a person who commits felony murder kills a person in the course of a felony and thereby commits a separate and distinct crime from that committed when a person causes the death of another under the manslaughter statutes. *State v. McJimpson*, 79 Wn. App. 164, 172, 901 P.2d 354 (1995), *review denied*, 129 Wn.2d 1013 (1996). "Manslaughter cannot be an inferior degree offense of felony murder." *Id.*

Does a second degree felony murder conviction based on the crime of first degree reckless endangerment violate the state and the federal constitutions?

Mr. Gilmer contends the prosecution of this

case violated his right to equal protection in that the prosecutors possessed the unfettered discretion to charge either felony murder or manslaughter. "Equal protection is violated when two statutes declare the same acts to be crimes, but penalize more severely under one statute than the other." *State v. Leech*, 114 Wn.2d 700, 711, 790 P.2d 160 (1990). However, the elements of felony murder by reckless endangerment are not the same as those of first degree manslaughter. Felony murder based on first degree reckless endangerment requires a death to result from the reckless endangerment. First degree manslaughter requires proof that a person recklessly caused a death. Moreover, "[t]he discretion vested in the prosecutor to selectively enforce criminal statutes is not unconstitutional if not based on unjustifiable standards." *State v. Wanrow*, 91 Wn.2d 301, 312, 588 P.2d 1320 (1978).

Mr. Gilmer asserts *Wanrow* is distinguishable because the felony murder there was based on an assault conviction which required proof of malicious intent. Mr. Gilmer suggests the *Wanrow* court would have reached a different conclusion had the underlying felony been that of reckless endangerment. In making this argument, Mr. Gilmer relies on the statement in *Wanrow* that: "The theoretical basis of felony-murder is that general malice (not intent to kill) may be inferred from the malicious felonious intent which must be present to prove the underlying felony." *Id.* at 306. Mr. Gilmer contends a reckless endangerment conviction cannot support a conviction for second degree felony murder because reckless endangerment does not require proof of malicious intent.

Mr. Gilmer's argument is unpersuasive. The theoretical basis for felony murder is that the state of mind requirement for the felony murder offense is supplied by the commission of the underlying felony. The purpose of the felony murder rule is to punish offenders who kill during the commission of a felony. The crime of felony murder is, by its very nature, a separate and distinct crime, even when its

elements appear to be similar to the elements of other offenses. Furthermore, in addressing the constitutionality of the felony murder rule, the *Wanrow* court noted that the constitutional arguments raised were not confined in theory to cases where the underlying felony was assault, but, rather, these arguments attacked the constitutionality of the felony murder rule per se. *Id.* at 309.

Mr. Gilmer also contends his conviction violated his right to due process because the felony murder rule (1) operated to provide a conclusive presumption that he possessed the intent necessary for murder, or (2) served to eliminate intent to kill as an element of second degree felony murder. The *Wanrow* court concluded that the felony murder rule did not violate due process; there is no need to reconsider this question here.

Mr. Gilmer next contends that his conviction violates the Eighth Amendment. He suggests that two recent United States Supreme Court cases require a reconsideration of the holdings in *Wanrow*, *State v. Thompson*, 88 Wn.2d 13, 25-27, 558 P.2d 202 (1977), and *State v. Harris*, 69 Wn.2d 928, 421 P.2d 662 (1966). The cases relied on by Mr. Gilmer, *Enmund v. Florida*, 458 U.S. 782, 102 S. Ct. 3368, 73 L. Ed. 2d 1140 (1982), and *Solem v. Helm*, 463 U.S. 277, 103 S. Ct. 3001, 77 L. Ed. 2d 637 (1983), have already been considered by Division One, which concluded that " 'Neither case involves merger principles and the cases are inapposite to the issues and rationale of *Wanrow*.' " *State v. Goodrich*, 72 Wn. App. 71, 79, 863 P.2d 599 (1993) (quoting *State v. Heggins*, 55 Wn. App. 591, 601 n.6, 779 P.2d 285 (1989)), *review denied*, 123 Wn.2d 1029 (1994).

Conducting a *Gunwall*[5] analysis, Mr. Gilmer also contends that his conviction must be reversed because article I, section 14 of the WASHINGTON CONSTITUTION grants broader protection than the Eighth Amendment. We need not address the extent of the protections afforded under article I, section 14 because Mr. Gilmer's underlying assumption is

---

[5]*State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4TH 517 (1986).

that his conviction is "cruel" because of the operation of the felony murder rule. In short, he believes his punishment was "cruel" because he was sentenced to 212 months in prison for an unintentional killing when he should have been convicted of manslaughter in the first degree. In effect, Mr. Gilmer is challenging the operation of the felony murder rule under the Eighth Amendment and article I, section 14. The felony murder rule is harsh, but it has repeatedly survived claims that it violates the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution, and article I, sections 3, 12 and 14 of the Washington Constitution. *Goodrich*, 72 Wn. App. at 77-78 (citing *State v. Crane*, 116 Wn.2d 315, 333, 804 P.2d 10 (1991)).

Does Mr. Gilmer's conviction for second degree murder violate the purposes of Washington's Sentencing Reform Act?

Finally, Mr. Gilmer contends the operation of the felony murder rule resulted in a conviction that violates the SRA because the rule permits him to be punished for second degree murder when he committed an unintentional killing. He asserts this result violates the SRA goals that punishment be proportionate to the seriousness of the offense and similar to that imposed on persons committing similar offenses. Mr. Gilmer further contends that the prosecutor has unfettered discretion to charge manslaughter or second degree felony murder. This argument has been rejected in *State v. McJimpson*, 79 Wn. App. 164, 177-78, 901 P.2d 354 (1995), *review denied*, 129 Wn.2d 1013 (1996).

Affirmed.

SCHULTHEIS, C.J., and KATO, J., concur.

Review denied at 139 Wn.2d 1023 (2000).