20 P.3d 993 (2001)
105 Wash.App. 555
STATE of Washington, Respondent,
v.
Eddie James LOCKLEAR, Appellant.
No. 24529-9-II.
Court of Appeals of Washington, Division 2.
March 30, 2001.
*994 Linda J. King, Steilacoom, Kevin R. Cole, Griffith & Cole Pllc, Seattle, Pattie Mhoon, Tacoma, for Appellant (Court Appointed).
Michael Lee Sommerfeld, Pierce Co. Deputy Pros. Atty., Tacoma, for Respondent.
MORGAN, J.
Eddie James Locklear was a passenger in a car. When it stopped, he got out, walked two blocks, and fired a gun at an occupied house. He was convicted under RCW 9A.36.045, the drive-by shooting statute, which required that he fire the gun "either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport [him] or the firearm, or both, to the scene of the discharge." He argues on appeal that the statute is unconstitutionally vague as applied to these facts. We agree and reverse.
On January 5, 1999, the State charged Locklear with drive-by shooting under RCW 9A.36.045(1). That statute provides in pertinent part:
A person is guilty of drive-by shooting when he or she recklessly discharges a firearm ... in a manner which creates a substantial risk of death or serious physical injury to another person and the discharge is either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter or the firearm, or both, to the scene of the discharge.
Neither "immediate area" nor "scene" is further defined.
Before trial, Locklear moved to dismiss the charge. His main argument was that the statute was unconstitutionally vague as applied to his case. The trial court denied his motion and held a bench trial on stipulated facts. At the end of trial, it convicted and entered the following written findings of fact:

I.
On January 2, 1999 during the early morning hours, nine members of the Vela family were asleep in their residence at 602 East G. St. in Tacoma, Washington. While they were sleeping, several shots were fired into their residence. The ammunition penetrated the house in several different places, traveling through rooms which included the living room and a bedroom. All nine members of the Vela family were at substantial risk [of] serious injury from the shots that were fired. Police responded and recovered two expended 12 gauge shotgun shells, and two expended.30-.30 caliber casings. Two people ran from the scene after the shots were fired.

II.
Animosities existed between defendant Julie Ishaq and Celia Vela, who resided at the above residence. Julie Ishaq formed a plan to shoot up the Vela house. Ishaq enlisted the help of her boyfriend, defendant Locklear, and defendant Rodgers. In the early morning hours of January 2, 1999, the three defendants obtained a .12 gauge shotgun and .30-30 caliber rifle, with ammunition for both weapons. With Ishaq driving her car, the three defendants set out for the area of town where the Velas live. None of the three defendants live anywhere near the Vela residence. The three defendants went to that part of town for the express purpose of executing the planned shooting.

III.
The three defendants traveled in the car, with the firearms, and stopped two blocks from the Vela house. As planned, Ishaq parked the vehicle two blocks away from the Vela house. Defendants Locklear and Rodgers exited the vehicle with the firearms. The two traveled on foot to the Vela house, while Ishaq waited in her vehicle for them to return once the shooting was accomplished. Locklear and Rodgers intentionally fired several shots into the Vela household, then fled back to the waiting vehicle. Defendant Ishaq then drove the vehicle away carrying the shooters and the firearms used in the crime.[[1]] *995 The trial court concluded that firearms were "discharged by ... Locklear and Rodgers from the immediate area of the vehicle driven by ... Ishaq [,]" and "[t]hat the vehicle driven by ... Ishaq was used to transport... Locklear and Rodgers and the firearms to the scene of the discharge of those firearms."[2]
Locklear argues on appeal that RCW 9A.36.045 is unconstitutionally vague as applied to a person who gets out of a motor vehicle and walks to a location two blocks away before recklessly discharging a firearm. A statute is unconstitutionally vague "if it does not define the criminal offense with sufficient definiteness so that ordinary people can understand what conduct is prohibited, or if it fails to provide ascertainable standards of guilt to protect against arbitrary enforcement."[3] In alternative terms, a statute is unconstitutionally vague if it "forbids conduct in terms so vague that persons of common intelligence must guess at its meaning and differ as to its application."[4] A statute is presumed constitutional, and the party asserting unconstitutionality must show unconstitutionality beyond a reasonable doubt.[5]
When assessing vagueness in a case in which First Amendment rights are not involved, a court examines the actual facts rather than hypothetical facts.[6] The statute is not unconstitutionally vague if the "defendant's conduct falls squarely within [its] prohibitions."[7]
For at least two reasons, RCW 9A.36.045 requires a nexus between the use of a car and the use of a gun.[8] First, it *996 requires that the car be used to transport the shooter or the gun to the "scene" of the shooting. Second, it requires that the gun be fired from inside the car or "from the immediate area" of the car.
Undoubtedly, a person of ordinary intelligence would know without guessing that this nexus exists when a car transports the shooter or the gun to the scene, and the shooter fires from inside the car. RCW 9A.36.045(1) provides that a person commits a felony "when he or she recklessly discharges a firearm... and the discharge is ... from a motor vehicle[.]" RCW 9A.36.045 (2) permits the trier of fact to infer recklessness when a person "unlawfully discharges a firearm from a moving motor vehicle[.]"
Undoubtedly, a person of ordinary intelligence would know without guessing that the required nexus exists when a shooter is transported to the scene in a car, gets out, and fires from within a few feet or yards of the car. RCW 9A.36.045(1) provides that a person commits a felony "when he or she recklessly discharges a firearm ... and the discharge is ... from the immediate area of a motor vehicle that was used to transport the shooter or the firearm ... to the scene of the discharge." Moreover, the term "immediate area of a motor vehicle" includes, at its core, the area within a few feet or yards of such motor vehicle.
In contrast, however, a person of ordinary intelligence would not know without guessing whether the required nexus exists when a shooter is transported to the scene in a car, walks two blocks away, then fires the gun. Although the term "immediate area of a motor vehicle" includes at its core the area within a few feet or yards of the motor vehicle, how is one to know whether it includes a location two blocks away? Although the term "scene of the discharge" includes at its core the area within a few feet or yards of the gun when the gun is fired, how is one to know whether it includes a location two blocks away? A person of common intelligence cannot answer these questions without guessing, and the statute is unconstitutionally vague as applied to this case.
This conclusion finds support in the fact that "immediate area" lacks a specific meaning in Washington law. Sometimes, it seems to mean a few feet or yards.[9] Other times, it seems to mean many miles.[10] As used in the context of RCW 9A.36.045, it seems to mean more the former than the latter, for it is used in the same breath as the inside of a car. For today, however, it is enough to note that a person of common intelligence would have no way of knowing, without guessing, whether a citizen who discharges a gun two blocks away from a motor vehicle is discharging the gun "from the immediate area" of the motor vehicle.
Our conclusion also finds support, though only slightly, in the fact that in every Washington drive-by shooting case decided on appeal to date, the shooter fired from inside the car, or from within a few feet or yards of the car.[11] Neither party cites, nor have we *997 found, any case here or elsewhere where the State has attempted to apply a statute that requires a close nexus between shooting and vehicle to facts that show a two-block distance in between. We note parenthetically that some out-of-state statutes criminalize firing a gun into an occupied house with or without a nexus to a vehicle.[12]
Nothing said herein means that RCW 9A.36.045 is unconstitutionally vague as applied to "core" facts. Nothing said herein means that Locklear is not guilty of a crime under a statute other than RCW 9A.36.045.[13] We hold only that RCW 9A.36.045 is unconstitutionally vague as applied to the facts of this case.
Reversed.
We concur: ARMSTRONG, C.J., SEINFELD, J.
NOTES
[1] Clerk's Papers at 45-46. Although the State presented these findings, and Locklear took no exception to them, they now suggest, each for its own reasons, that the evidence may not support a finding that Ishaq's car was parked about two blocks from the Vela house when Locklear and Rodgers got out, armed themselves, and set off on foot toward the house. We reject this suggestion. The parties stipulated to the use of documents titled "Declaration for Determination of Probable Cause" and "Supplemental Declaration for Determination of Probable Cause." Clerk's Papers at 44. The original Declaration states in part that Ishaq "planned to park two blocks north of the residence and wait for them to do the shooting[,]" and that "[t]his plan was followed[.]" Br. of Appellant at A-6. The Supplemental Declaration states that a "two block distance [is] involved in this case[.]" Br. of Appellant at A-10. The Supplemental Declaration also states that Ishaq "drove to the area of the Vela residence [,]" where Locklear and Rodgers armed themselves with guns; that Locklear and Rodgers "then left Ishaq in the car to wait for them to finish the planned shooting"; that Locklear and Rodgers "then walked to the house with the firearms"; and that Locklear and Rodgers "fired several shots into the residence," after which they "ran back to the waiting vehicle." Br. of Appellant at A-9 (emphasis added). This evidence is sufficient to support findings that Ishaq's car remained stationary from when Locklear and Rodgers got out to when they returned; that the car was located about two blocks from the Vela residence while stationary; and thus that the car was about two blocks from the Vela house when Locklear and Rodgers got out.
[2] Clerk's Papers at 47.
[3] State v. Groom, 133 Wash.2d 679, 691, 947 P.2d 240 (1997); see also Kolender v. Lawson, 461 U.S. 352, 357, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); City of Bremerton v. Spears, 134 Wash.2d 141, 161, 949 P.2d 347 (1998); City of Seattle v. Montana, 129 Wash.2d 583, 596-97, 919 P.2d 1218 (1996); State v. Myles, 127 Wash.2d 807, 812, 903 P.2d 979 (1995); State v. Halstien, 122 Wash.2d 109, 117, 857 P.2d 270 (1993); State v. Coria, 120 Wash.2d 156, 163, 839 P.2d 890 (1992); City of Spokane v. Douglass, 115 Wash.2d 171, 178, 795 P.2d 693 (1990); State v. Motherwell, 114 Wash.2d 353, 369, 788 P.2d 1066 (1990); City of Seattle v. Eze, 111 Wash.2d 22, 27, 759 P.2d 366 (1988).
[4] Spears, 134 Wash.2d at 161, 949 P.2d 347; see also Montana, 129 Wash.2d at 597, 919 P.2d 1218; Coria, 120 Wash.2d at 163, 839 P.2d 890; Douglass, 115 Wash.2d at 179, 795 P.2d 693; Eze, 111 Wash.2d at 26, 759 P.2d 366; State v. Smith, 111 Wash.2d 1, 7, 759 P.2d 372 (1988).
[5] Groom, 133 Wash.2d at 691, 947 P.2d 240; Halstien, 122 Wash.2d at 118, 857 P.2d 270; Coria, 120 Wash.2d at 163, 839 P.2d 890; Douglass, 115 Wash.2d at 177, 795 P.2d 693; Eze, 111 Wash.2d at 26, 759 P.2d 366; Smith, 111 Wash.2d at 5, 759 P.2d 372.
[6] Spears, 134 Wash.2d at 162, 949 P.2d 347; Groom, 133 Wash.2d at 691, 947 P.2d 240; State v. Becker, 132 Wash.2d 54, 62, 935 P.2d 1321 (1997); Montana, 129 Wash.2d at 597, 919 P.2d 1218; Halstien, 122 Wash.2d at 117, 857 P.2d 270; Coria, 120 Wash.2d at 163, 839 P.2d 890; Douglass, 115 Wash.2d at 182-83, 795 P.2d 693; State v. Worrell, 111 Wash.2d 537, 541, 761 P.2d 56 (1988).
[7] Smith, 111 Wash.2d at 10, 759 P.2d 372.
[8] This nexus is spatial. We note, parenthetically only, that a temporal nexus might also be required. Suppose a person drives his car to a friend's house and parks it for a week while he stays with the friend as an overnight guest. At the end of the week, he recklessly fires a gun into a house while standing next to his parked car. Does RCW 9A.36.045 criminalize his conduct as a drive-by shooting?
[9] E.g., WAC 246-817-770(2) (person administering anesthesia or monitoring patient may not leave immediate area in which procedure takes place); WAC 246-826-200(2) (health care professional to be physically present in immediate area when health care assistant administers controlled drugs); WAC 296-45-45515(2) (employee in immediate area of stump-grinding must wear protective equipment); WAC 296-155-525(3)(f)(iii) (no flammable material in immediate area of crane or derrick); WAC 212-17-317 (prohibiting the presence of any person from the immediate area of fireworks during testing or firing circuits); WAC 296-45-45505(5) (employee in immediate area of an operating chipper feed table must wear protective equipment); WAC 296-56-60115(8) (immediate area surrounding life ladder shall be painted with a bright color or of a color which contrasts with the surrounding area); WAC 296-307-076(5) (where removing a guard or access door exposes an employee to components that continue to rotate, a warning sign must be posted in the immediate area).
[10] E.g., RCW 15.04.160(1) (workers under 12 may not be employed unless the immediate area has insufficient workers over 12); RCW 43.31.406 ("destination tourism resort" is one used primarily by non-residents of the immediate area).
[11] State v. Gilmer, 96 Wash.App. 875, 879, 981 P.2d 902 (1999) ("As the Bronco pulled up next to the white car, Mr. Gilmer stuck the barrel of the gun out the window of the passenger side of the Bronco, pointed the gun at the white car, and pulled the trigger."), review denied, 139 Wash.2d 1023, 994 P.2d 848 (2000); State v. Pastrana, 94 Wash.App. 463, 469, 972 P.2d 557 ("Pastrana then rolled down the passenger window and fired one shot out the window ...."), review denied, 138 Wash.2d 1007, 984 P.2d 1035 (1999); State v. Washington, 64 Wash.App. 118, 121, 822 P.2d 1245 (1992) ("He saw a `bright flash' from the passenger side window on a light-colored station wagon[;]" passenger testified gun went off accidentally). Although we cite only published opinions, see RAP 10.4(h), we are not aware of any unpublished opinion that is not consistent.
[12] See, e.g., TEX. PENAL CODE ANN. § 22.05 (person commits crime if he or she "knowingly discharges a firearm at or in the direction of ... one or more individuals; or ... a habitation, building, or vehicle and is reckless as to whether the habitation, building, or vehicle is occupied").
[13] The State argues that because Locklear is surely guilty under some statute other than RCW 9A.36.045, he cannot bring an as-applied vagueness challenge against RCW 9A.36.045. We reject that argument in the belief that standing to bring an as-applied vagueness challenge depends on a comparison of the charged conduct to the statute under which the charge is brought, and not on a comparison of the charged conduct to all statutes under which the charge might have been brought. We also note that the State does not identify the other statutes to which it refers.