# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 47648-7-II |
| Respondent/Cross Appellant, | consolidated with<br>No. 48748-9-II |
| v. | |
| ROBERT OSTASZEWSKI, | UNPUBLISHED OPINION |
| Appellant/Cross Respondent. | |

MELNICK, J. — Robert Ostaszewski appeals his convictions for assault in the first degree with a firearm enhancement and drive-by shooting. The State cross-appeals, arguing that the trial court erred by instructing the jury on self-defense. We conclude that the trial court did not err by giving a first aggressor instruction, the drive-by shooting statute is not impermissibly vague as applied to Ostaszewski's case, and assault in the first degree and drive-by shooting did not constitute the same criminal conduct because the victims were different. Because of our disposition of these issues, we do not reach the State's cross-appeal. We affirm.

FACTS

## I.      THE STATE'S CASE

On the morning of November 12, 2013, an "unkept" and "rough" looking couple who appeared to be in their 20s approached the cash register at the store where Ostaszewski's wife,

Michelle,[1] worked. RP (Feb. 4, 2015) at 327. She asked the man if he had a rewards card, to which he replied, "No, but I have a 9 millimeter." RP (Feb. 3, 2015) at 258.

When Michelle later learned that this couple was suspected of living in a "black Pathfinder" in the store parking lot, her hands started to shake. RP (Feb. 4, 2015) at 329. Michelle called her husband and told him about the comment.

Joshua Johannessen and his girlfriend, Laura Sprague, were living in their black SUV in the store parking lot. Their vehicle broke down and they had been camped out in the parking lot for a few days.

Johannsen and Sprague left the parking lot for a while and when they returned, they noticed a white van parked behind them. Ostaszewski sat in the driver's seat. He appeared to be taking pictures of them. Sprague felt "uncomfortable." RP (Feb. 3, 2015) at 154. Johannessen did not think much of it, and the couple went into the store to get food.

Approximately 15-20 minutes later, they went back to their vehicle and noticed the white van had not moved. It remained there for a total of approximately 40 minutes. Johannsen and Sprague went back into the store. When they returned to their vehicle approximately 30-45 minutes later, Johannessen noticed the van was now parked directly in front of them, facing their vehicle.

Johannessen saw that Ostaszewski had his phone out and pointed towards them. It looked like he was taking pictures or filming them. Johannessen became concerned and felt "nervous and uncomfortable." RP (Feb. 3, 2015) at 162. After approximately one minute, Johannessen opened his door and stood up to see if Ostaszewski would notice him. When Ostaszewski did not react,

---

[1] Because Michelle shares the same last name as the appellant, we refer to her by her first name. We intend no disrespect.

Johannessen "flipped him off" to see if he would react. RP (Feb. 3, 2015) at 162; RP (Feb. 4, 2015) at 509. Ostaszewski nodded his head and pointed his phone back at them. Johannessen then took a picture of Ostaszewski taking a picture of him and Sprague.

Concerned for their safety, Johannessen decided to ask Ostaszewski why he was taking pictures of them. As Johannessen walked over to the driver's side window, which was rolled down, Ostaszewski looked straight ahead and did not look at Johannessen. Johannessen stood two feet away from Ostaszewski. He noticed that Ostaszewski looked nervous and was "shaking real bad and turned red." RP (Feb. 4, 2015) at 514. Johannessen had a small pocket knife clipped on the front pocket of his pants, but the knife was fully inside his pocket and he did not take it out. He held a lit cigarette in his right hand and his car keys in his left hand.

Once at the window, Johannessen said, "What the f*** are you doing? Are you videotaping me and my girlfriend?" RP (Feb. 4, 2015) at 515. Johannessen kept his hands at his side. Ostaszewski said nothing. Johannessen saw two loaded clips on the passenger seat and thought, "[O]h s***, I walked up to the wrong person." RP (Feb. 4, 2015) at 517. He saw that Ostaszewski shook, sweated, and looked agitated and nervous.

Johannessen started to feel panicked and scared. Not knowing what to do, Johannessen said, "I don't know what you're doing, but if you're going to shoot me, I hope you kill me because if you don't, I'm going [to] come through the window." RP (Feb. 4, 2015) at 518. Johannessen did not reach into the van or move. Ostaszewski had a periodical on his lap and threw it at Johannessen. Johannessen saw a gun on Ostaszewski's lap. Ostaszewski then pointed the gun at Johannessen's face and fired. The bullet hit the side of Johannessen's neck.

3

Johannessen dropped his cigarette and keys and ran towards a gas station. While running, Johannessen heard an additional two or three shots. A bullet hit Johannessen's wrist. Johannessen ran past the gas pumps to the other side of the gas station where he asked for help.

Witnesses at the gas station pumps saw Ostaszewski calmly stand next to his van pointing a gun at the gas station. They could not clearly state at whom or what Ostaszewski pointed his gun. One witness believed Ostaszewski "might shoot at the gas pumps hoping it would explode." RP (Feb. 3, 2015) at 143.

At the hospital, doctors found gunshot wounds in Johannessen's left lower neck and left wrist area. The gunshot wound to Johannessen's neck was a "through-and-through" that avoided vital structures in the area. RP (Feb. 4, 2015) at 409. He was treated for his wounds and released the same day. It was later determined that Johannessen was not the man who made the 9 millimeter comment in the store.

## II. THE DEFENSE'S CASE

Most of the facts at trial were undisputed. Ostaszewski's testified about his perspective of the incident. Ostaszewski owned a white utility van. A container behind the driver's seat held various items, including two loaded clips. The clips were zipped up inside a fanny pack. Ostaszewski has had a concealed pistol permit for over 10 years and he sometimes carried a concealed gun on his person.

When Ostaszewski received the call from his wife, he could hear that she sounded scared. Michelle told him about the 9 millimeter comment and described the man and woman. She further told Ostaszewski that the couple lived in a black SUV in the parking lot.

Shortly after the phone call, Ostaszewski wanted to make sure his wife was safe. He drove to the store and brought his gun. He did not call the police. When he pulled into the parking lot, Ostaszewski found a black SUV and parked behind it. He decided to gather information so that when his wife got off work, they could contact the police. Ostaszewski did not tell his wife that he was surveilling the couple.

Ostaszewski took photographs of the back of Johannessen's vehicle. When Johannessen exited the vehicle to go to the store, Ostaszewski was certain in his own mind that Johannessen had made the 9 millimeter comment. Ostaszewski believed Johannessen had a gun. Ostaszewski went into the store and told Michelle that the couple was still in the area. She became scared.

After briefly speaking with Michelle, Ostaszewski went back outside and saw Johannessen and Sprague walking a dog. Ostaszewski went back to his van and drove toward them so he could get a better picture. He parked his van directly in front of their SUV, approximately one and a half car lengths away, and took about one dozen pictures of the couple. Ostaszewski still felt he could not call 911 because Johannessen had not done anything to him.

A few minutes later, Ostaszewski saw Johannessen get out of the vehicle and quickly approach his van. He noticed a knife clipped on Johannessen's front right pocket. Before he got to the van, Johannessen said, "What the 'F' are you doing taking pictures of me and my girlfriend?" RP (Feb. 5, 2015) at 638. Ostaszewski held his hand up and said, "Back away, back away, back away." RP (Feb. 5, 2015) at 639. He did not tell or show Johannessen that he had a gun. Although he never saw it, Ostaszewski believed Johannessen had a 9 millimeter gun. Ostaszewski did observe an unidentified object in Johannessen's hand.

Johannessen continued to move forward. When he stopped at the van, he was "right up on" Ostaszewski. RP (Feb. 5, 2015) at 640. Ostaszewski could not see Johannessen's hands. Ostaszewski's gun was holstered in his right front hip and there were no clips on the passenger seat. Johannessen looked angry and "like he was on something." RP (Feb. 5, 2015) at 640-41. He told Ostaszewski he better shoot him or kill him otherwise he would come through the window and beat him. Scared and not knowing what Johannessen would do, Ostaszewski leaned back, drew his gun, and fired.

Ostaszewski shot his gun three times in rapid succession. On the first shot, he intended to hit Johannessen, but could not tell if he did. He saw Johannessen run away, while looking back at him. Ostaszewski believed Johannessen would come back with his 9 millimeter and shoot him in retaliation. Ostaszewski fired two more shots, aimed intentionally towards the ground, hoping to get Johannessen away from him. Ostaszewski fired the shots as Johannessen ran toward the gas station.

When Ostaszewski saw Johannessen running toward the gas station, he could see people at the gas pumps. Ostaszewski exited his van and began following Johannessen. When he arrived at a halfway point between his van and the gas station, Ostaszewski holstered his gun and went back to his van to call the police.

Ostaszewski told the emergency operator that he shot someone who harassed him. He mentioned that Johannessen had a knife, but he did not mention a gun. Ostaszewski said he was concerned that Johannessen would hurt someone at the gas station or go back into the store for his wife.

The State charged Ostaszewski with murder in the first degree with a firearm enhancement,[2] assault in the first degree with a firearm enhancement, and drive-by shooting. He pled not guilty to all three counts and claimed self-defense.

III.    JURY INSTRUCTIONS

After both sides rested, the State argued that the trial court should give a first aggressor instruction because Ostaszewski's act of "surveilling" Johannessen, including taking pictures and invading his privacy, constituted an intentional act that provoked Johannessen's belligerent response. RP (Feb. 6, 2015) at 863. Ostaszewski objected.

The trial court ruled that whether Ostaszewski was the first aggressor was a question for the jury and gave the instruction as follows:

> No person may, by any intentional act reasonably likely to provoke a belligerent response, create a necessity for acting in self-defense and thereupon attempt to kill another person. Therefore, if you find beyond a reasonable doubt that the defendant was the aggressor, and that defendant's acts and conduct provoked or commenced the fight, then self-defense is not available as a defense.

Clerk's Papers (CP) at 88

The trial court also instructed the jury on drive by shooting. The court's instructions mirrored the information, which identified Johannessen as the victim of the assault in the first degree, and identified the victim of the drive-by shooting as any other person who was at risk of death or serious injury due to the discharge of the gun.

---

[2] Although the second amended information charged Ostaszewski with murder in the first degree, the trial court only gave a "to convict" instruction on attempted murder in the first degree. The jury returned a verdict of not guilty on the charge. The record does not reflect that anybody died from this incident.

The jury acquitted Ostaszewski of attempted murder in the first degree, but found him guilty of assault in the first degree with a firearm enhancement and drive-by shooting. The trial court sentenced Ostaszewski to 189 months of confinement.

IV.     MOTION FOR NEW TRIAL

Ostaszewski moved for a new trial or relief from judgment based on ineffective assistance of counsel. He argued that his trial lawyer failed to explore plea options and explain sentencing consequences. At sentencing, the trial court denied the motion because it was untimely.

In a subsequent motion to modify or vacate, Ostaszewski argued that his attorney was ineffective for failing to argue that the offenses constituted the same criminal conduct. The court denied the motion and ruled that assault in the first degree and drive-by shooting did not constitute the same criminal conduct.

Ostaszewski appeals and the State cross-appeals.

ANALYSIS

I.     FIRST AGGRESSOR INSTRUCTION

Ostaszewski argues that the trial court erred in giving a first aggressor instruction because the evidence did not support it. We disagree.

A first aggressor instruction must be supported by sufficient credible evidence that the defendant provoked the use of force. *State v. Riley*, 137 Wn.2d 904, 909-10, 976 P.2d 624 (1999). Whether sufficient evidence justified a first aggressor instruction is a question of law we review de novo. *State v. Bea*, 162 Wn. App. 570, 577, 254 P.3d 948 (2011). We view the evidence in the light most favorable to the party requesting the first aggressor instruction. *See State v. Wingate*, 155 Wn.2d 817, 823 n.1, 122 P.3d 908 (2005) (citing *State v. Fernandez-Medina*, 141 Wn.2d 448, 455-56, 6 P.3d 1150 (2002)).

8

A defendant asserting self-defense must produce some evidence that he or she acted in reasonable apprehension of great bodily harm and imminent danger. *Riley*, 137 Wn.2d at 909. While the defendant need not show he or she was in actual danger, a defendant who provoked the confrontation cannot later claim his actions were in self-defense. *State v. Douglas*, 128 Wn. App. 555, 562, 116 P.3d 1012 (2005).

A trial court "properly submits [a first] aggressor instruction where (1) the jury can reasonably determine from the evidence that the defendant provoked the fight, (2) the evidence conflicts as to whether the defendant's conduct provoked the fight, or (3) the evidence shows that the defendant made the first move by drawing a weapon." *State v. Anderson*, 144 Wn. App. 85, 89, 180 P.3d 885 (2008). To meet the burden of production, there need only be some evidence showing that the defendant was the first aggressor. *Anderson*, 144 Wn. App. at 89. The provoking act must be distinct from the assault itself. *Bea*, 162 Wn. App. at 577.

Each party is entitled to have the jury instructed on its theory of the case if evidence supports the theory. *Riley*, 137 Wn.2d at 908 n.1. However, a first aggressor instruction may remove a self-defense claim from the jury's consideration, thereby relieving the State of its burden to disprove that a defendant acted in self-defense. *Bea*, 162 Wn. App. at 575-76. Therefore, the instruction should "be given only sparingly and carefully, in cases where the theories of the case cannot be sufficiently argued and understood by the jury without such an instruction." *Bea*, 162 Wn. App. at 576.

Here, sufficient evidence existed to show that Ostaszewski's acts of surveilling Johannessen for a lengthy period and invading his privacy were the intentional acts that caused Johannessen's belligerent response. Ostaszewski surveilled Johannessen and Sprague for at least one hour. He parked closely behind Johannessen and Sprague's vehicle, and then moved and

9

parked his van approximately one and a half car lengths away, facing Johannessen's vehicle. Ostaszewski continued to take pictures and video of Johannessen, even after he saw Johannessen watching him and flip him off. When Johannessen walked up to Ostaszewski, Johannessen did not have a gun, his pocket knife was inside his pocket, and he had his car keys and a cigarette in his hands.

While Ostaszewski's actions may have been lawful, a reasonable jury could have determined that, based on the evidence, these intentional acts provoked Johannessen's belligerent response. The intentional act required to provoke a belligerent response does not have to be unlawful conduct. *See Wingate*, 155 Wn.2d at 822-23. From Johannessen's perspective, Ostaszewski was following and surveilling him for unknown reasons. A reasonable jury could have found that Johannessen felt Ostaszewski harassed him.

Here, the State met its burden of production by showing some evidence that Ostaszewski was the first aggressor. The instruction allowed the State to argue its theory of the case. Viewing the evidence in the light most favorable to the State, a reasonable jury could find that Ostaszewski's acts were intentional and reasonably likely to provoke a belligerent response. We, therefore, conclude that sufficient evidence supported the first aggressor instruction and giving the instruction was proper.

## II. DRIVE-BY SHOOTING STATUTE

Ostaszewski next argues that the drive-by statute requires a "nexus" between the use of a car and the use of a gun, and that the statute is vague because a person of ordinary intelligence would not know that his conduct amounted to a drive-by shooting. Ostaszewski's arguments fail.

We review the constitutionality of a statute de novo. *State v. Eckblad*, 152 Wn.2d 515, 518, 98 P.3d 1184 (2004). Unless the First Amendment to the United States Constitution is implicated, vagueness challenges are evaluated in light of the particular facts of each case. *Eckblad*, 152 Wn.2d at 518. Because the drive-by shooting statute does not involve First Amendment rights, we evaluate the statute's constitutionality as applied to Ostaszewski's situation.

"'Under the due process clause of the Fourteenth Amendment, a statute is void for vagueness if either: (1) the statute does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed; or (2) the statute does not provide ascertainable standards of guilt to protect against arbitrary enforcement.'" *State v. Watson*, 160 Wn.2d 1, 6, 154 P.3d 909 (2007) (quoting *State v. Williams*, 144 Wn.2d 197, 203, 26 P.3d 890 (2001) (internal quotations omitted)). The party asserting the vagueness challenge must prove the statute's unconstitutionality beyond a reasonable doubt. *State v. Stevenson*, 128 Wn. App. 179, 188, 114 P.3d 699 (2005). "The statute is not unconstitutionally vague if the 'defendant's conduct falls squarely within [its] prohibitions.'" *State v. Locklear*, 105 Wn. App. 555, 559, 20 P.3d 993 (2001) (quoting *State v. Smith*, 111 Wn.2d 1, 10, 759 P.2d 372 (1988)).

Vagueness is not simply uncertainty as to the meaning of a statute. *Watson*, 160 Wn.2d at 7. Nor can the title of a statute limit the plain meaning of the statute's text. *Pennsylvania Dep't of Corrs. v. Yesky*, 524 U.S. 206, 212, 118 S. Ct. 1952, 141 L. Ed. 2d. 215 (1998). A penal statute must be sufficiently explicit to inform a defendant what conduct on their part will render them liable to its penalties. *Watson*, 160 Wn.2d at 6-7. Therefore, such a statute must not "'forbid[ ] or require[ ] the doing of an act in terms so vague that men of common intelligence must necessarily

11

guess at its meaning and differ as to its application.'" *Watson*, 160 Wn.2d at 7 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391, 46 S. Ct. 126, 70 L. Ed. 322 (1926)).

The trial court in this case instructed the jury in terms of the statute.

A person commits the crime of drive by shooting when he or she recklessly discharges a firearm in a manner that creates a substantial risk of death or serious physical injury to another person and the discharge is either from a motor vehicle or from the immediate area of a motor vehicle that was used to transport the shooter or the firearm to the scene of the discharge.

CP at 80 (Instr. 24); RCW 9A.36.045(1).

In support of his argument, Ostaszewski relies on *Locklear*. In that drive-by shooting case, the shooter walked several blocks from his vehicle before recklessly discharging a firearm. *Locklear*, 105 Wn. App. at 559. We held that as applied to that case, the statute was vague because a person of common intelligence would not know, without guessing, that a person who discharges a gun two blocks away from a motor vehicle was discharging a gun "from the immediate area" of the motor vehicle. *Locklear*, 105 Wn. App. at 561-62. Ostaszewski argues that per *Locklear*, the required nexus between the use of the gun and the car requires both a spatial and temporal component.

Here, such a nexus existed. The evidence clearly showed that Ostaszewski transported his gun in his van. He fired all three gunshots while he sat in his van, two of which were shot in the direction of the gas station. Ostaszewski's act of shooting from inside his van fell squarely within the statute's prohibition.

Ostaszewski also argues that a person of ordinary intelligence would not understand without guessing that his conduct amounted to a drive-by shooting because of the ordinary meaning of the term "drive-by." This argument is meritless. The title of a statute does not limit the plain meaning of the statute's text. *Yesky*, 524 U.S. at 212. A plain reading of the statute

12

sufficiently and explicitly informs people what conduct will render them liable to the statute's penalties. *Watson*, 160 Wn.2d at 6-7. The statute explicitly prohibits reckless discharge of a gun from a motor vehicle that was used to transport the shooter or the gun or both to the scene of the discharge. RCW 9A.36.045(1).

Here, a person of common intelligence need not guess at the statute's meaning or application. As described above, Ostaszewski's conduct fell squarely within the statute's prohibitions. Because Ostaszewski failed to prove the statute's unconstitutionality beyond a reasonable doubt, we conclude that the drive-by shooting statute as applied to Ostaszewski's case was not impermissibly vague.[3]

III.     SAME CRIMINAL CONDUCT

Lastly, Ostaszewski argues that because his assault in the first degree and drive-by shooting convictions were the same criminal conduct, he received ineffective assistance of counsel when his attorney failed to raise the issue at sentencing. While Ostaszewski's attorney did not argue the issue at sentencing, it was later argued at Ostaszewski's hearing on his motion to modify or vacate.

---

[3] Ostaszewski also argues that the legislature did not envision the application of drive-by shooting to a case like his. Citing to the 1989 Omnibus Drug Act's preamble, he argues that the statute's intended purpose was to punish drug traffickers. He argues that if the statute is not confined to its intended purpose, prosecutors could add drive-by shooting to virtually any assaultive conduct with a firearm. The argument is meritless. As our Supreme Court noted in *State v. Rodgers*:

> [T]he legislature aimed [the drive-by shooting statute] at individuals who discharge firearms from or within close proximity of a vehicle. Undoubtedly, it was concerned that reckless discharge of a firearm from a vehicle or in close proximity to it presents a threat to the safety of the public that is not adequately addressed by other statutes.

146 Wn.2d 55, 62, 43 P.3d 1 (2002) (footnote omitted). Accordingly, we have affirmed drive-by shooting convictions that have not involve drug-trafficking. *E.g.*, *State v. Dobbs*, 167 Wn. App. 905, 276 P.3d 324 (2012); *State v. Bluehorse*, 159 Wn. App. 410, 248 P.3d 537 (2011); *State v. Vincent*, 131 Wn. App. 147, 120 P.3d 120 (2005).

There, the trial court found the offenses were not the same criminal conduct. Because Ostaszewski's attorney raised the issue below, we do not address the issue for ineffective assistance of counsel and instead address it on the merits.

For sentencing purposes, two or more crimes constitute same criminal conduct when they ". . . require the same criminal intent, . . . are committed at the same time and place, and . . . involve the same victim." *State v. Saunders*, 120 Wn. App. 800, 824, 86 P.3d 232 (2004); RCW 9.94A.589(1)(a). We narrowly construe the same criminal conduct rule. *Saunders*, 120 Wn. App. at 824. Unless all prongs are present, the criminal offenses must be counted separately. *State v. Chenoweth*, 185 Wn.2d 218, 220, 370 P.3d 6 (2016). The defendant has the burden of establishing same criminal conduct. *State v. Graciano*, 176 Wn.2d 531, 539, 295 P.3d 219 (2013). A trial court's determination of what constitutes the same criminal conduct will not be disturbed absent an abuse of discretion or misapplication of the law. *Graciano*, 176 Wn.2d at 536.

Here, the information and the jury instructions made it clear that Johannessen was the victim of the assault in the first degree. They also made it clear that the "victim" of Ostaszewski's drive-by shooting included anyone who was at risk due to his reckless behavior.[4] Each count had different victims. Because Ostaszewski cannot satisfy the same victim prong of the same criminal conduct test, we conclude that the offenses were not the same criminal conduct.

---

[4] We also note that "[d]rive-by shooting does not require a victim; it requires only that reckless conduct creates a risk that a person might be injured." *In re Pers. Restraint of Bowman*, 162 Wn.2d 325, 332, 172 P.3d 681 (2007).

Due to our resolution of the issues above, we do not address the State's cross-appeal on whether or not the trial court erred by instructing the jury on self-defense.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Melnick, J.

We concur:

_____
Maxa, A.C.J.

_____
Lee, J.