IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34959-4-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| RUDY E. WILLIAMS, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Rudy Williams appeals his convictions for third degree assault, felony violation of a court order and three counts of witness tampering, entered following a bench trial in which he represented himself.

We reject Mr. Williams's contentions that the amended information was insufficient in charging felony violation of a court order; that he did not knowingly, voluntarily and intelligently waive his right to counsel; and that the evidence is insufficient to support his five convictions.

We agree with him that his Sixth Amendment to the United States Constitution right to confrontation was violated when two witness statements were admitted based on

an insufficient demonstration of forfeiture by wrongdoing. The error in admitting the evidence was harmless in the case of the felony violation of a court order charged in count 1 and the witness tampering charged in counts 3 and 4. In the case of the assault charged in count 2 and the witness tampering charged in count 5, it was not harmless, and requires reversal and retrial.

For those reasons, and because Mr. Williams raises no meritorious arguments in a pro se statement of additional grounds, we affirm the convictions for counts 1, 3, and 4 and remand counts 2 and 5 for a new trial.

## FACTS AND PROCEDURAL BACKGROUND

At around 9:00 p.m. one evening in May 2016, Misty Shoemaker called 911 and reported that Rudy Williams had hit her with a belt. Deputy Daniel Vargas and a second deputy responded. Deputy Vargas spoke to Ms. Shoemaker, who was upset and crying at the time of their arrival. She told the deputy that she and Mr. Williams had argued and Mr. Williams had struck her three times with a belt. She showed the deputy her back, and he saw "two distinctive belt marks," which he photographed. Report of Proceedings (RP) at 148. She also complained of pain to her knee, which is where she said she was struck the third time. Nothing was visible on the knee so it was not photographed.

Deputy Vargas then spoke to Mr. Williams, who stated that he had nothing to do with whatever had happened with the belt. According to Mr. Williams, it was only Ms. Shoemaker and the children who had been "horsing around" with a belt. RP at 135.

2

The deputy also spoke to Mr. Williams's and Ms. Shoemaker's son, La'Quan, who said he had seen Mr. Williams strike his mother with the belt three times.

Deputy Vargas arrested Mr. Williams that night for fourth degree assault. Within days, the State discovered that at the time of the assault, a valid Idaho domestic violence order resulting from Mr. Williams's domestic battery of Ms. Shoemaker on January 17, 2016, forbade him from having contact with her. The State refiled its case against Mr. Williams in superior court, this time charging him with third degree assault and felony violation of a court order. At the hearing at which the superior court granted the State's motion to dismiss and found probable cause for the new charges, it was informed that public defender Richard Laws had represented Mr. Williams in connection with an earlier controlled substances charge. It appointed Mr. Laws to represent him in this matter. Mr. Williams did not object.

At arraignment 10 days later, represented by Mr. Laws, Mr. Williams asked to be heard. He told the court he wanted a different lawyer appointed, stating "there's just too many different issues with me and [Mr. Laws] and his office" and he did not believe Mr. Laws would give him "a proper defense." RP at 21. Although Mr. Williams offered to go into specifics, the trial court stated, "This is not the day for that," and told Mr. Williams he should note a motion for an upcoming law and motion docket. RP at 21.

Approximately a month later, correction officers at the Asotin County Jail intercepted correspondence contained in an envelope addressed to "Cathy McNeil," with

3

the envelope indicating it was from "Daniel K"—evidently Kevin Daniel, an inmate at

the jail. The correspondence was referred to Detective Jackie Nichols, who concluded

that all but one of the documents in the envelope were in Mr. Williams's handwriting.

From the handwriting and the content of the documents, she construed them to be the

following:

- A cover letter intended for a person named Cathe McNeill, from Mr. Williams, thanking her for her friendship and help;

- A second page of instructions from Mr. Williams, directing Ms. McNeill to print out statements he had enclosed, get them signed, and deliver them as instructed. The page of instructions included an expression of concern that a statement from Ms. Shoemaker needed to be signed and notarized or Mr. Williams would be given 10 years, because the State could use the police report against him "even though [M]isty dosent [sic] show." It also stated, "Inside is a letter to Lisa, from Kevin."

- A one page letter from Kevin Daniel to Lisa Bond. Ms. Bond was one of the State's witnesses in the pending Idaho domestic battery case against Mr. Williams. Mr. Daniel's letter asked Ms. Bond to "[p]lease help Misty get this taken care of with Rudy"; and

- Three more pages in Mr. Williams's handwriting, comprising witness statements for court that recanted the witnesses' earlier statements against him in two pending cases. One was for Lisa Bond, to be filed in the Idaho district court. Another was for Ms. Shoemaker, also to be filed in the Idaho district court. The last was for Ms. Shoemaker, to be filed in this case.

Clerk's Papers (CP) at 12-14. True copies of the documents, which were admitted at trial

as Exhibits P-4 through P-8, are included in an appendix.

Detective Nichols forwarded her analysis of the documents to the Asotin County

prosecutor with a recommendation that Mr. Williams be charged with witness tampering.

The State amended its information in July 2016 to include three counts of witness tampering.

In late September 2016, Mr. Williams filed a handwritten declaration requesting appointment of a new attorney and outlining his complaints about Mr. Laws. His complaints all had to do with what he felt was insufficient contact with Mr. Laws and insufficient progress in preparing his defense. On October 17, 2016, a telephonic hearing was conducted. Mr. Laws was present, but the trial court spoke principally with Mr. Williams, informing him that the court did not "have the ability just to appoint you different counsel because you have disagreements with the way that you think he is hand[ling] the case. . . . I can allow you to proceed pro se if you want." RP at 32. Mr. Williams stated that he did not have disagreements with Mr. Laws; the problem was "his lack of . . . dedication to my case." RP at 32.

The court acknowledged Mr. Williams's frustration but stated that if it reassigned cases every time a defendant was dissatisfied with defense counsel, it would be reassigning a third of all cases and would be unable to "marshal [its] resources effectively." RP at 33. The trial court went on to explain, "You have a right to . . . court appointed counsel, but you don't get to pick who it is." RP at 33.

Ultimately, Mr. Williams stated: "[A]t this point in my life right now, I cannot see myself proceeding with Mr. Laws, so, therefore, I'm going to have to try to represent myself." RP at 34. The trial court gave the following warning: "[I]f you represent

5

yourself . . . I can't save you from up here. . . . [Y]ou're going to be required . . . to know the laws of evidence and the rules of procedure just like any lawyer would be required to do. . . . I can't play with kid gloves just because you're representing yourself pro se; do you understand?" RP at 35. Mr. Williams stated, "I don't have any choice right now at all. I mean, I could do a better defense." RP at 35. The trial court acceded to his waiver of counsel.

A few days later, on October 20, with Mr. Williams proceeding pro se, the prosecutor met with him at the jail in an effort to negotiate a resolution to the case. During the meeting, Mr. Williams told the prosecutor that Ms. Shoemaker and their son would not testify against him.

The State had filed for and been granted a material witness warrant for Ms. Shoemaker two days earlier. Before long, she was found at her mother's home in Lewiston and was arrested. The State moved for her release at a hearing on October 31, explaining that it was content to have her released on her own recognizance and "we are not alleging that she was on the dodge. We lost track of her; we couldn't find her." RP at 51. Ms. Shoemaker promised the trial court she would provide "solid contact information" and was released. RP at 54. The State proved unable to contact her thereafter, however, and a second material witness warrant was issued on November 18, 2016.

At a telephonic hearing on November 18, 2016, several motions were heard and both Mr. Williams and the State reported they were ready for trial. The State brought with it to the hearing a form document, a "Colloquy and Defendant's Waiver of Right to Counsel," that it asked the court to review with Mr. Williams. The trial court reviewed the document with Mr. Williams on the record. It covered, e.g., Mr. Williams's right to self-representation, his education and his fluency in English, whether he had represented himself in prior legal proceedings, his understanding of the charges against him and the maximum penalties, his understanding that the judge could not help him, his understanding of the legal rules that would apply, and whether Mr. Williams's decision to represent himself was voluntary. He indicated it was voluntary. Mr. Williams's answers were handwritten by someone on the form, which was filed, but Mr. Williams refused to sign it.

On November 21, the State moved the court to admit the statements to law enforcement made by Ms. Shoemaker and La'Quan on the basis of "forfeiture by wrongdoing," if the two failed to appear for trial. CP at 75. It pointed to the recantation statements that had led to the witness tampering charges and argued that Mr. Williams "tacitly admitted" to ensuring Ms. Shoemaker's and La'Quan's absence from trial when he told the prosecutor that neither would testify against him. CP at 113. The trial court granted the motion over Mr. Williams's objection.

Mr. Williams waived his right to a jury trial and his bench trial went forward on November 22. The trial court heard testimony from Deputy Vargas; from Officer Tom Woods and Detective Brett Dammon of the Lewiston Police Department, who had responded to the January 2016 domestic battery in Idaho; and from Detective Jackie Nichols. Deputy Vargas was permitted to testify to the statements made to the 911 dispatcher and to him by Ms. Shoemaker and La'Quan. The court found Mr. Williams guilty as charged and sentenced him to 60 months' confinement. He appeals.

## ANALYSIS

Mr. Williams makes 13 assignments of error, many to written findings and conclusions entered by the court. His contentions can be summarized as five categories of alleged error that we address in the order in which they occurred in the proceedings.

I. THE AMENDED INFORMATION ADEQUATELY CHARGED FELONY VIOLATION OF A COURT ORDER

For the first time on appeal, Mr. Williams challenges the constitutional sufficiency of the amended information's charge of felony violation of a court order, contending, conclusorily, that "[t]he information in this case alleged *misdemeanor* violation of a no contact order, but Williams was convicted of a *felony* violation of a no contact order." Appellant's Opening Br. at 34 (emphasis added).

"An information must contain [a]ll essential elements of a crime." *State v. Green*, 101 Wn. App. 885, 889, 6 P.3d 53 (2000) (alteration in original) (internal quotation

8

marks omitted) (quoting *State v. Kjorsvik*, 117 Wn.2d 93, 97, 812 P.2d 86 (1991)). When, as here, a charging document is challenged for the first time on appeal, it must be construed liberally. *State v. Williams*, 162 Wn.2d 177, 185, 170 P.3d 30 (2007). We need only determine if the necessary facts appear in any form in the charging document. *Id.*

RCW 26.50.110 generally makes it a gross misdemeanor for an individual who is restrained by a protection order issued under certain Washington statutes or a valid foreign protection order, and who knows of the order, to violate certain provisions of the order. Subsection (4) of the statute elevates the violation to a class C felony if the violation is an assault that does not amount to assault in the first or second degree, or if conduct in violation of the order is reckless and creates a substantial risk of death or serious bodily injury to another person. Mr. Williams appears to argue that the State's amended information is insufficient because it asserts that Mr. Williams's violation was an assault, but does not assert that his conduct was reckless and created a substantial risk of death or serious physical injury to another. *See* Appellant's Opening Br. at 37.

RCW 26.50.110(4) provides two alternative means of committing felony violation of a court order: violating it by committing an assault, or violating it by conduct that is reckless and creates a substantial risk of death or serious injury to another person.[1] The

---

[1] The Washington Pattern Jury Instructions' "to-convict" instruction for felony violation of a court order recognizes that between them, subsections (4) and (5) of RCW

State charged only one means in the amended information: violation by an assault. It

stated:

> That on or about the 3rd day of May 2016, in Asotin County,
> Washington, the above named Defendant with knowledge that the
> Nez Perce County District Court, had previously issued a no contact
> order pursuant to Chapter 26.50 RCW in State of Idaho v. Rudy
> Eugene Williams, Cause No. CR-2016-0349, did violate the order
> while the order was in effect by assaulting Misty Shoemaker.
>
> Contrary to RCW 26.50.110(4); CLASS C FELONY; the maximum
> penalty for which is pursuant to RCW 9A.20.021: five (5) years
> incarceration and fine of ten thousand dollars ($10,000.00).

CP at 26. All of the essential elements are stated: a valid no contact order was in place,

Mr. Williams knew of it, Mr. Williams knowingly violated it, he violated it by assaulting

Ms. Shoemaker, and the assault occurred in Washington State.[2]

The amended information sufficiently charged felony violation of a court order.

---

26.50.110 provide three alternative means of committing felony violation of a court
order: the two we have identified and, under subsection (5), violation by a defendant who
has twice been previously convicted for violating the provisions of a court order. It
includes all three, in bracketed language, to be used depending on the means that are
charged. 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS:
CRIMINAL 36.51.02 (4th ed. 2016) (WPIC).

The Note on Use to the WPIC states, "Care must be taken to limit the alternatives
to those that were included in the charging document and are supported by sufficient
evidence." *Id.*

[2] Even a non-element in this case—that the assault was a third degree assault
rather than a first or second degree assault—was disclosed on the second page of the
amended information. *See State v. Ward*, 148 Wn.2d 803, 813, 64 P.3d 640 (2003)
(Unless a defendant is also charged with an assault in the first or second degree, there is
no need to state in the charging document that the predicate assault for felony violation of
a court order does not amount to a first or second degree assault.).

10

II.     THE TRIAL COURT DID NOT ABUSE ITS DISCRETION IN FINDING MR. WILLIAMS'S
        WAIVER OF THE RIGHT TO COUNSEL TO BE KNOWING, VOLUNTARY, AND
        INTELLIGENT

A defendant who has been found competent to stand trial may ask to represent himself or herself. *See In re Pers. Restraint of Rhome*, 172 Wn.2d 654, 667, 260 P.3d 874 (2011). Self-representation is a constitutional right, implicit in the Sixth Amendment right to counsel and explicitly guaranteed by article I, section 22 of the Washington Constitution. *Faretta v. California*, 422 U.S. 806, 818-32, 95 S. Ct. 2525, 45 L. Ed. 2d 562 (1975); *State v. Madsen*, 168 Wn.2d 496, 503, 229 P.3d 714 (2010).

A waiver of the defendant's right to counsel "must be not only voluntary, but knowing and intelligent." *Rhome*, 172 Wn.2d at 667. A thorough colloquy on the record about the dangers and disadvantages of self-representation is the preferred method of ensuring an intelligent waiver of the right to counsel. *City of Bellevue v. Acrey*, 103 Wn.2d 203, 211, 691 P.2d 957 (1984).

"A waiver determination is an ad hoc determination that rests on a judge's evaluation of a defendant's conduct, background, and experience." *Rhome*, 172 Wn.2d at 667-68. We review such a decision for an abuse of discretion, reversing only when the decision was manifestly unreasonable, reached by applying the wrong legal standard, or based on facts not supported by the record. *Id*. at 668. "Because the trial court has the opportunity to observe a defendant's demeanor and nonverbal conduct, appellate courts

11

owe considerable deference to a trial court's finding in this regard." *State v. Floyd*, 178

Wn. App. 402, 410, 316 P.3d 1091 (2013).

Mr. Williams's challenge to the validity of his waiver of his right to counsel

focuses on the passage of time between when the trial court found a waiver—October 17,

2016—and November 18, 2016, the date on which the trial court reviewed the State's full

written colloquy with Mr. Williams on the record. It would have been preferable had all

of the points addressed by the written colloquy been covered with Mr. Williams in a more

formal way at the October hearing. Nevertheless, evidence in November 2016 that Mr.

Williams acted knowingly, voluntarily, and intelligently in waiving his right to counsel is

some evidence that he had acted knowingly, voluntarily, and intelligently in waiving the

same right four weeks earlier. And at the hearing on October 17, the trial court gave Mr.

Williams one of the most important admonitions, telling him,

> [I]f you represent yourself, ah, I can't save you from up here. Ah, you're
> going to be required . . . to know the laws of evidence and the rules of
> procedure just like any lawyer would be required to do. Ah, and any
> objection that the State has, I can't play with kid gloves just because you're
> representing yourself pro se; do you understand?

RP at 35.

Mr. Williams was 39 years old, with a 10th grade education, and with no mental

health issues reflected in the record. He appears to have been criminally prosecuted eight

times before, so he was not new to the process. In proceedings taking place before the

October 17 hearing and at that hearing, he conducted himself respectfully and responded

12

in a rational way to the trial court's comments and questions. Following a thorough

colloquy on November 18, he affirmed that he was voluntarily electing to represent

himself rather than by the lawyer appointed to represent him. We find no reason not to

defer to the trial court's finding of waiver based on its evaluation of Mr. Williams's

conduct, background, and experience.

III.    FORFEITURE BY WRONGDOING WAS NOT ESTABLISHED BY CLEAR, COGENT AND
        CONVINCING EVIDENCE, AND IT WAS ERROR TO ADMIT THE STATEMENTS OF MS.
        SHOEMAKER AND LA'QUAN ON THAT BASIS

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused

shall enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST.

amend. VI. In practice, this ordinarily means that if the State wishes to present a

witness's prior testimonial statements at trial, the witness must be truly unavailable and

the defendant must have had a prior opportunity for cross-examination. *Crawford v.

Washington*, 541 U.S. 36, 59, 68, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). But the

confrontation right is subject to forfeiture, *see id.*, and it was "forfeiture by wrongdoing,"

recognized by our Supreme Court in *State v. Mason*, 160 Wn.2d 910, 926, 162 P.3d 396

(2007), and clarified by the United States Supreme Court in *Giles v. California*, 554 U.S.

353, 128 S. Ct. 2678, 171 L. Ed. 2d 488 (2008), that the State argued made Ms.

Shoemaker's and La'Quan's statements admissible against Mr. Williams.

"The doctrine of forfeiture by wrongdoing holds that a criminal defendant waives

his Sixth Amendment confrontation rights if the defendant is responsible for the witness's

absence at trial." *State v. Dobbs*, 167 Wn. App. 905, 912, 276 P.3d 324 (2012) (*Dobbs* I) (citing *Mason*, 160 Wn.2d at 924), *aff'd*, 180 Wn.2d 1, 320 P.3d 705 (2014) (*Dobbs* II). This court has held that application of the doctrine "requires a finding that (1) the defendant engaged in wrongdoing; (2) the wrongdoing was intended to render the absent witness unavailable at trial; and (3) the wrongdoing did, in fact, render the witness unavailable at trial." *State v. Tyler*, 138 Wn. App. 120, 128, 155 P.3d 1002 (2007) (citing *United States v. Gray*, 405 F.3d 227, 241 (4th Cir. 2005)). "Once the State shows that the defendant's conduct is the reason for the witness's absence, the State may introduce the witness's out-of-court statements." *Dobbs* I, 167 Wn. App. 912 (citing *Mason*, 160 Wn.2d at 924).

The State must prove the causal link between the defendant's conduct and the witness's absence by clear, cogent, and convincing evidence. *Id.* at 912-13. The evidence must also establish that the defendant engaged in the conduct "with the intention to prevent the witness from testifying." *Dobbs* II, 180 Wn.2d at 11. As observed in Justice Souter's concurring opinion in *Giles*, the history of the doctrine provides a "substantial indication that the Sixth Amendment was meant to require some degree of intent to thwart the judicial process before thinking it reasonable to hold the confrontation right forfeited; otherwise the right would in practical terms boil down to a measure of reliable hearsay, a view rejected in *Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004)." *Giles*, 554 U.S. at 380 (Souter, J., concurring).

Whether Mr. Williams's confrontation right was violated by admission of the statements is an issue we review de novo. *Dobbs* II, 180 Wn.2d at 10.

Given the elements of the doctrine, Mr. Williams's witness tampering conduct— the materials he prepared and attempted to send to Ms. McNeill—did not support the required causation because the envelope was not delivered.

*Giles* recognized that a history of domestic abuse and threats of abuse intended to dissuade a victim from resorting to outside help can be relevant to the issues of causation and intent, as can evidence of ongoing criminal proceedings at which the victim was expected to testify. 554 U.S. at 377. In *Mason*, our Supreme Court found evidence of a victim's reports of threats of abuse to be relevant to causation and intent where the victim was threatened by the defendant with death, was released by the defendant only after promising not to call police, and later called a victim's advocate "expressing fear for his life and begging to sleep in jail for safety." *Mason*, 160 Wn.2d at 916. At the same time, the *Mason* court recognized that the clear, cogent, and convincing standard is "*not an easy standard to meet*." *Id.* at 927 (emphasis added).

Finding forfeiture by wrongdoing in this case would make the clear, cogent, and convincing standard of proof "an easy standard to meet" in most domestic violence cases. The trial court was presented with two instances of domestic violence against Ms.

Shoemaker. Neither was shown to involve a substantial injury.[3] Both were reported to police. At the hearing on the State's motion to release Ms. Shoemaker from custody following her arrest on a material witness warrant—a hearing that took place only three weeks before the trial—the prosecutor stated, "[W]e are not alleging that she was on the dodge." RP at 51. In her own testimony to the court at the hearing, she admitted she had been given a time and date to appear to be interviewed by the prosecutor "but at that time I just wasn't really paying attention." RP at 49. "I wasn't trying to hide or anything like that from them." *Id.* When Mr. Williams objected to the prosecutor speaking to Ms. Shoemaker without someone else present, protesting that she would be "manipulated" into signing something, she responded, "No, I'm not Rudy. I will not be. It's not— they're not like that, Rudy, at all." RP at 52.

As Mr. Williams argued in opposition to the statements' admission, he had been in custody since his arrest and the State presented no evidence that he had successfully discouraged or made threats about witness attendance, directly or indirectly, to anyone outside. The State's evidence made it no more likely that Ms. Shoemaker's failure to appear at trial was the result of intentional conduct by Mr. Williams designed to keep her

---

[3] At trial, the lead officer who investigated the domestic battery of Ms. Shoemaker in Idaho testified that upon responding to a 911 call, he observed a slight swelling of Ms. Shoemaker's cheek, but no redness or bruising. A second officer did not observe any injury to Ms. Shoemaker, but explained that as a cover officer, he "kind of stood back." RP at 186.

16

away than it was the result of her own volition. The State did not present the clear, cogent and convincing evidence required to overcome Mr. Williams's confrontation right.

Even where evidence's admission was constitutional error, the error is harmless "if the appellate court is assured beyond a reasonable doubt that the . . . verdict cannot be attributed to the error." *State v. Lui*, 179 Wn.2d 457, 495, 315 P.3d 493 (2014), *aff'd*, 188 Wn.2d 525, 397 P.3d 90 (2017). In determining whether confrontation clause error is harmless, we examine whether the untainted evidence was "so overwhelming that it necessarily leads to a finding of guilt." *Id.*

The erroneous admission of Ms. Shoemaker's and La'Quan's statements is harmless in the case of Mr. Williams's conviction for felony violation of a court order. Mr. Williams's statements on the night of the alleged assault were properly admitted, as were Deputy Vargas's observations at Mr. Williams's home and the Idaho protection order. That evidence was sufficient to support findings of fact by the court that support, in turn, its conclusion that Mr. Williams was guilty of felony violation of a court order. We are satisfied beyond a reasonable doubt that the verdict cannot be attributed to the erroneous admission of Ms. Shoemaker's and La'Quan's statements.

Mr. Williams makes a separate evidence sufficiency challenge to the witness tampering and assault charges. We address whether the erroneous admission of Ms.

17

Shoemaker's and La'Quan's statements was harmless with respect to those charges in connection with the following discussion of the evidence sufficiency challenges.

IV.     THE STATE'S EVIDENCE OF WITNESS TAMPERING AS CHARGED IN COUNTS 3 AND 4
        WAS SUFFICIENT AND IN CONNECTION WITH THOSE COUNTS, ADMISSION OF MS.
        SHOEMAKER'S AND LA'QUAN'S STATEMENTS WAS HARMLESS

A claim of insufficiency admits the truth of the State's evidence and all reasonable inferences from it. *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When a defendant challenges the sufficiency of the evidence to convict, this court reviews the evidence in the light most favorable to the State and determines whether any rational trier of fact could have found the elements of the charged crime beyond a reasonable doubt. *State v. Brown*, 162 Wn.2d 422, 428, 173 P.3d 245 (2007).

A person is guilty of witness tampering if he attempts to induce a witness or a person he has reason to believe is about to be called as a witness in any official proceeding to testify falsely, withhold testimony, or fail to appear. RCW 9A.72.120(1). Proof of the defendant's specific intent to obstruct justice is not required. *State v. Rempel*, 53 Wn. App. 799, 805, 770 P.2d 1058 (1989) (*Rempel* I), *rev'd on other grounds*, 114 Wn.2d 77, 785 P.2d 1134 (1990) (*Rempel* II). It is sufficient to prove the defendant knew the person approached was going to be a witness. *Id.*

18

For purposes of this insufficiency claim, Mr. Williams admits that he handwrote the cover letter, the instruction letter, and the recantation statements.[4] Relying on our Supreme Court's decision in *Rempel* II, he argues that his words did not literally contain a request to withhold testimony, an express threat, or a promise of any reward. In *Rempel* II, the Supreme Court reversed the conviction for attempted rape of a defendant who called the victim from jail and apologized, stating "'it'" was going to ruin his life and asking that she "'drop the charges.'" 114 Wn.2d at 83. Literally, the court concluded, the defendant was not asking the victim to lie or absent herself, but was only acting on his lay person's belief that a complaining witness can cause a prosecution to be discontinued. *Id. Rempel* II holds, however, that the State "is entitled to rely on the inferential meaning of the words and the context in which they were used." *Id.* at 83-84.

The trial court in this case made the following finding about the January 17, 2016 domestic battery in Idaho, which is supported by the evidence:

> On January 17, 2016, Officer Tom Woods of the Lewiston Police Department responded to a domestic violence call at the Cedars Inn in Lewiston, Idaho. Ms. Shoemaker told Officer Woods that Rudy Williams had punched her in the face. Lisa Bond, a witness, told Officer Woods that she had observed Mr. Williams punch Ms. Shoemaker in the face. Mr. Williams admitted to law enforcement that he hit Ms. Shoemaker in the face because Ms. Shoemaker had disrespected him in front of other females and his children.

---

[4] Mr. Williams's statement of the case appears to question Detective Nichols' qualifications as a handwriting expert and the evidence on which she relied, but he has not assigned error to the admission of her testimony.

CP at 102-03 (Finding of Fact (FF) 4).

Relying on the inferential meaning of the words in the recantation statements and the context, the trial court found that Mr. Williams had prepared a recantation statement for Lisa Bonds for use in Mr. Williams's pending domestic battery prosecution in Idaho, "which said that while Mr. Williams was very verbally abusive at the Cedar's Inn Motel in Lewiston, Idaho, Mr. Williams never touched Ms. Shoemaker." CP at 103 (FF 8). It found that Mr. Williams had prepared a recantation statement for Ms. Shoemaker for use in the Idaho prosecution "which said that Mr. Williams has never, at any time, put his hands on Ms. Shoemaker." CP at 103 (FF 9).

Weighing the evidence from Officer Woods, the instructions to Ms. McNeill, and the recantation statements, the trial court found that "Mr. Williams wrote these letters in [an] effort to have Ms. Bond and Ms. Shoemaker give false testimony." CP at 104 (FF 11). All of these findings are supported by the evidence. They supported the trial court's conclusions of law that Mr. Williams was guilty of witness tampering as charged in counts 3 and 4, dealing with recantation statements to be used in the Idaho prosecution.

The erroneous admission of Ms. Shoemaker's and La'Quan's statements under the forfeiture by wrongdoing doctrine is harmless in the case of Mr. Williams's convictions for witness tampering as charged in counts 3 and 4. Officer Woods's testimony was admitted without objection by Mr. Williams. Even if Ms. Shoemaker's statement to Officer Woods was intended to be covered by the forfeiture by wrongdoing ruling (and it

20

is not clear that it was), Ms. Shoemaker and Mr. Williams both told Officer Woods that

Mr. Williams had punched Ms. Shoemaker in the face. This was sufficient to establish

that the Idaho recantation statements Mr. Williams had drafted for Ms. Bonds and Ms.

Shoemaker were both false. We are satisfied beyond a reasonable doubt that the verdicts

on counts 3 and 4 cannot be attributed to the court's erroneous admission of Ms.

Shoemaker's and La'Quan's statements.

V.     THE STATE'S EVIDENCE OF ASSAULT AS CHARGED IN COUNT 2 AND WITNESS
       TAMPERING AS CHARGED IN COUNT 5 WAS SUFFICIENT, BUT IN CONNECTION WITH
       THOSE COUNTS, ADMISSION OF MS. SHOEMAKER'S AND LA'QUAN'S STATEMENTS
       WAS NOT HARMLESS ERROR; RETRIAL IS REQUIRED

As already explained, a claim of insufficiency admits the truth of the State's

evidence and all reasonable inferences from it. In a case such as this, where the trial

court erred in admitting particular pieces of evidence, the claim of insufficiency (the

remedy for which is dismissal rather than retrial) admits the truth of *all* the evidence

admitted by the trial court, including the erroneously admitted evidence. *Lockhart v.

Nelson*, 488 U.S. 33, 41, 109 S. Ct. 285, 102 L. Ed. 2d 265 (1988); *State v. Jasper*, 174

Wn.2d 96, 120, 271 P.3d 876 (2012). We exclude the erroneously admitted evidence in

deciding whether the error was harmless, however.

Mr. Williams argues that the State failed to prove that he caused "bodily harm" to

Ms. Shoemaker, which is a required element of third degree assault. RCW

9A.36.031(1)(d) provides that "[a] person is guilty of assault in the third degree if he or

21

she, under circumstances not amounting to assault in the first or second degree: . . . (d) With criminal negligence, causes *bodily harm* to another person by means of a weapon or other instrument or thing likely to produce *bodily harm*." (Emphasis added.) The definition section of chapter 9A.04 RCW provides in relevant part that "'bodily harm' means physical pain or injury, illness, or an impairment of physical condition." RCW 9A.04.110(4)(a).

When it comes to "physical pain," a trier of fact presented with photographs of an injury may draw reasonable inferences about the amount of physical pain inflicted. *State v. Brown*, 60 Wn. App. 60, 67, 802 P.2d 803 (1990), *overruled on other grounds by State v. Chadderton*, 119 Wn.2d 390, 398, 832 P.2d 481 (1992) (jury was presented with photographs and could draw inferences about pain suffered by child spanked with a belt). Ms. Shoemaker called 911 to report being struck. She was upset and crying when Deputy Vargas arrived. According to the deputy, "She had a complaint of pain on her knee where she was reportedly struck for the third time." RP at 158. Ms. Shoemaker's complaint of pain was direct evidence, and the trial court was entitled to draw inferences from the photograph, the 911 call, and Deputy Vargas's description of her demeanor.

As to physical "injury," Mr. Williams provides no authority for his argument that a mark on skin left by being struck by a belt does not qualify. Appellant's Opening Br. at 33. The word "injury" is not defined by statute, but its common dictionary meaning includes "hurt, damage, or loss sustained." WEBSTER'S THIRD NEW INTERNATIONAL

DICTIONARY 1164 (1993). A mark on skin that reveals the body's repair response (a burn, a bruise, a welt) is, in common parlance, an injury. Deputy Vargas used the term in this way when examined at trial, understanding and using the term "injuries" to refer to the welts on Ms. Shoemaker's back and her complaint of knee pain. *E.g.*, RP at 134, 136-38.

Sufficient evidence supported the trial court's verdict on the assault charge.

With respect to the assault charge, however, the error in admitting Ms. Shoemaker's and La'Quan's statements was not harmless. Without their statements, Deputy Vargas's photograph and description of the welts that he observed was admissible, but the only admissible explanation for them was Mr. Williams's: that they were caused when Ms. Shoemaker and the children were horsing around with a belt, something he had nothing to do with. The assault charge must be reversed and remanded for a new trial.

Count 5, the tampering with a witness charge based on Mr. Williams's preparation of Ms. Shoemaker's recantation statement for this matter, meets the same fate. The evidence was sufficient: the trial court found from Ms. Shoemaker's and La'Quan's statements to Deputy Vargas that Mr. Williams had struck her with a belt three times and it found that the recantation statement prepared by Mr. Williams "said that Ms. Shoemaker falsely accused Mr. Williams and that while Mr. Williams is not physically

abusive, he is mentally abusive." CP at 104 (FF 10)[5]. It found that "Mr. Williams wrote these letters in [an] effort to have Ms. Bond and Ms. Shoemaker give false testimony." *Id.* Its findings are supported by the evidence and, in turn, support its conclusion of law that Mr. Williams was guilty of witness tampering as charged in count 5.

With respect to this charge, too, the error in admitting Ms. Shoemaker's and La'Quan's statements was not harmless. Only their statements provide the basis for the trial court's finding that the recantation handwritten for Ms. Shoemaker by Mr. Williams was false. Witness tampering as charged in count 5 must be reversed and remanded for a new trial.

STATEMENT OF ADDITIONAL GROUNDS

In a pro se statement of additional grounds (SAG), Mr. Williams raises two. The first—that his waiver of counsel was not knowing, voluntary, or intelligent—has been adequately addressed by his appellate lawyer and will not be considered further. *See* RAP 10.10(a).

His second is that he received ineffective assistance of counsel from Mr. Laws. The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To establish ineffective assistance of counsel, a defendant must demonstrate that

---

[5] The December 27, 2016 findings of fact and conclusions of law after bench trial contains two findings numbered 10. We refer to the first finding of fact 10.

No. 34959-4-III
*State v. Williams*

a lawyer's representation was deficient and that the deficient representation prejudiced him. *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

Mr. Laws was relieved from his role as counsel at the hearing on October 17. Mr. Williams's SAG fails to provide specifics of any deficient representation or prejudice resulting from deficient performance provided while Mr. Laws served as counsel. If Mr. Williams has evidence outside of the trial record that would establish specific acts of deficient representation and resulting prejudice, his remedy is to file a personal restraint petition, supported by the required evidence.

We affirm Mr. Williams's convictions for count 1 (felony violation of a court order), and counts 3 and 4 (witness tampering). We reverse his convictions for count 2 (assault in the third degree) and count 5 (witness tampering), and remand for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Fearing, J.

25

Dear Cathy

I first of all, want to thank you Cathy, for yoúer help..... With-out it I would truly be lost to this system. You truly have a Heart of GOLD, expecially dealing with some of us Clarkston mis-fets. I Honistly wish the Vary best, for you and Terril...... Between us. Cathy I truly intend to give this up, and try my hardest to be a father. I hope that thier is any way, I can hope to start to repay you for all that you have done, for me.

GOD bless you cathy, all yoúer day's.

Love Rudy

① Please print out all Statments.

② After "*ALL*" are Siged, and Noterized, please get 3= copy's of each.

③ Deliver Misty's, and Lisa's Idaho Statments to my Idaho Lawyer MR. Rick Whddhey's office at 312 17th St. #(208) 746-0104 ( OR Contact my Sister Maria #(509) 552 3977 ( and She Can handle, after Statments or Noterized.

④ My Lawyer tell's me that W.A. assault charge will be droped to misdorminer braking a "No - Contact order, only if Lewiston's Domistic charge is droped, first, ULTimatly "*Must*" have WA Statment from misty Singed, and Noterized, or I will Be giving 10 yrs. Because the State Can us the police Report aginst me, eventhough misty dosent Show —

⑤ Only add misty's medication papperwork, to her WA. Statment

⑥ Inside is a letter for Lisa, from Kevin.

Lisa

Please help misty get this taken care of with Ruby.
He never wanted all this. He wants to go to rehab and feels bad for getting you involved but the bottom line is none of this is worth anyone doing, 121 months in prison let her know that!

because Put your foot down with her. Judy will own his part! She should too.
Her mouth is no worse than his Bett!

for Real

Love you Babe

Idaho Distric Court                    Date

I'm writing this statment regarding an inccident that occured at the Cidders INN motel, Lewiston I.D, between Rudy Williams, and Misty Shoemaker. While MR. Williams was vary verbally abusive, towards MS. Shoemaker, and myself, he never touched MS. Shoemaker. Though thay were Load and vary nasty with one another, I was just personaly upset with MR. Williams, for adding me to his personal disputs. This is my reson for fileing inital statment, during the Cedders INN inccident. Please understand that I am Sorry, and that I never aging will express this sort of conduct, with youer office, in the future.

Sincerly

Print:                                    Date
Singed:
witness:

Court House                                    Date

I misty M. Shoemaker am writing this, Courts letter to the Courts, because of an altercation that Caused Rudy williams to get arrested, on a 4th Dge. Domistic Charge at the Cedders (motel) INN, I need to advise the Courts that Rudy williams, has neve, at anytime physically placed his hand's on me (We have unfortunatly at times, been Vary argumentive, with one another) Me and Rudy are now Seperated, and it is my intention to hold no more ill-will to word's him, personaly. Though my actions this's far, weren't right, I feel that the only way for me to move forward, is to try and clear-up any Melicious/Negitive actions, that I may have caused others. I Sincerly apologize for any troubles that I may have caused your office.

Thank You for your time

Print:                                    Date
Singed:
Witness:

ASotin County Sup. Court Date.

This Statement is With regard's to a fales inccident, Which was to have occured on 5-4-6, at 1933 13th st. Clarkston WA. (This is my childrens father's home Rudy Williams.) After arriving Unbenounced to MR. Williams, a brif argument insueid, Were I Called the asotin Co. Police Opt. and falsely accused MR. Williams of Striking me. After a rocky 15 yrs. relationship, Were both party's have faults. I Can't Consciencly allow my own personal Vendictive issues, to become involved. I also recently discovered that I Suffer from a bipoyler disorder, which I believe also Contributed to my actions on 5-4-16. (Attached is a Copy of medication/ext.) Thorgh "NOT" physically absive, he is Mentally absive, and it is my hope that MR. Williams will recive Some type of Drug and alcohol treatment, to better him self. The Courts have my most humble apologizes. I truly didnt Know exactly how to handle myself, or the Verbally absive Sitoation, I was in, that lead to this apology. I am So Sorry, for the Courts inconvienience

Sincerly.....

Name _____     Date _____
Singed
witness

31